1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLI SUE HALEY BEAUCHAMP,<br><br>                                Plaintiff,<br><br>    vs.<br><br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security<br><br>                          Defendant. | CASE NO. 09-CV-1857 MMA (WMc)<br><br>**REPORT & RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO AFFIRM COMMISSIONER'S DECISION** |

## I.

## INTRODUCTION

This matter is before the Court on cross-motions for summary judgment. Plaintiff Shelli Sue Haley Beauchamp brings her motion under § 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g)[1], seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for Disability Insurance Benefits ("DIB") under Title II of the Act. Plaintiff asks the Court to grant her motion for summary judgment, reversing the Commissioner's decision, which Plaintiff argues is: (a) based on legal error; (b) not supported by substantial evidence,

---

[1] "Any individual, after any final decision of the Commissioner of Social Security made afer a hearing to which he was a party . . . may obtain judicial review of such decision by a civil action . . . brought in the district court of the United States . . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).

1  and; ©) capricious and arbitrary in its finding of facts and conclusions of law.  The Commissioner

2  concurrently seeks summary judgment to affirm the ALJ's decision.

3      The Court finds the motions appropriate for submission on the papers and without oral

4  argument pursuant to Local Rule 7.1(d)(1).  After careful review of the moving and opposition papers,

5  the administrative record, the facts, and the law, it is recommended that the Court **DENY** Plaintiff's

6  motion for summary judgment and **GRAN**T the Commissioner's cross-motion for summary judgment

7  to affirm the Commissioner's decision denying disability benefits.

8  **II.**

9  **PROCEDURAL HISTORY**

10      On March 22, 2006, Plaintiff filed an application for Social Security Disability Insurance

11  Benefits alleging disability on January 1, 2004.  *See* Administrative Record ("AR") at 14.  Her

12  application was denied initially and also on reconsideration.  AR at 14.  On February 6, 2007, a

13  request for a hearing was timely filed.  AR at 14.  The ALJ submitted his decision on August 19, 2008,

14  finding the claimant was not entitled to disability insurance benefits.  AR at 22.  The decision of the

15  Social Security Administration became final when the Appeals Council adopted the ALJ's findings

16  in a decision dated June 22, 2009.  AR at 1.

17      On August 26, 2009, Plaintiff filed the instant complaint pursuant to §405(g) of the Act in

18  order to obtain judicial review of a "final decision" from the Commissioner of the Social Security

19  Administration ("Commissioner") denying her claim for Disability Insurance Benefits ["DIB"].

20  Defendant filed an answer to the complaint on November 2, 2009.

21      On January 29, 2010, Plaintiff filed a motion for summary judgment.  [Doc. No. 12.]  On

22  February 6, 2010, Plaintiff filed an amended motion for summary judgment (hereinafter "PM") [Doc.

23  No. 14.] and Defendant filed a cross-motion for summary judgment (hereinafter "DM") on February

24  26, 2010**.**  [Doc. No. 15.]  Both motions were found suitable for decision without oral argument and

25  taken under submission. [Doc. No. 16.]

26  ///

27  ///

28  ///

# III.

## DISCUSSION

### 1.      Legal Standard

A claimant is entitled to disability benefits if, considering her age, education and work experience, she is unable to perform the work she previously performed and also the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months..." 42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual:

> shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

The Secretary of the Social Security Administration has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  **Step one** determines whether the claimant is engaged in "substantial gainful activity."  If she is, disability benefits are denied.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If she is not, the decision maker proceeds to **step two**, which determines whether the claimant has a medically severe impairment or combination of impairments.  That determination is governed by the "severity regulation" which provides in relevant part:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520 ©), 416.920 ©).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521 (b), 416.921 (b).  Such abilities and aptitudes include "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling"; "[c]apacities for seeing, hearing, and speaking"; "[u]nderstanding, carrying out, and remembering simple instructions"; [u]se of judgment"; "[r]esponding appropriately to supervision,

co-workers, and usual work situations"; and "[d]ealing with changes in a routine work setting." *Id.*

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.   If the impairment is severe, the evaluation proceeds to the **third step**, which determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520 (d), 416.920 (d); 20 C.F.R. Part 404, Appendix 1 to Subpart P.  If the impairment meets or exceeds one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the **fourth step**, which determines whether the impairment prevents the claimant from performing work she has performed in the past.  If the claimant is able to perform her previous work, she is not disabled.  20 C.F.R. §§ 404.1520 (e), 416.920 (e).  If the claimant cannot perform her previous work, the **fifth** and **final step** of the process determines whether she is able to perform other work in the national economy in view of her age, education, and work experience.  The claimant is entitled to disability benefits only if she is not able to perform other work.  20 C.F.R. §§ 404.1520 (f), 416.920 (f).

Section 405(g) of the Act allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. § 405(g).  The scope of judicial review is limited.  The Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  *Brawner v. Secretary of Health and Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988) (citing *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Secretary of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (citing *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir.1985)).  If the evidence supports more than one rational

interpretation, the court must uphold the ALJ's decision. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

Even if the reviewing court finds substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978). Section 405(g) permits a court to enter a judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administrator for further proceedings. *Id.*

**2.      The ALJ's Decision**

After weighing the evidence from the administrative record and listening to the testimony of Plaintiff and the experts, the ALJ determined Plaintiff retained the residual functional capacity to perform sedentary work, as defined in 20 C.F.R. 404.1567(a), which was additionally limited to simple repetitive tasks due to side effects of medications. [AR 16]  In finding Dr. Rashad Ansari's opinion inconsistent with his own assessment of Plaintiff's ability to sit, stand, and walk for a total of twelve hours in an eight hour day, the ALJ discredited Dr. Ansari's opinion that Plaintiff would miss work four days per month. [AR 16]  The ALJ relied on the opinion of the medical expert, Dr. Michael Goldhamer, and the State Agency consultants in reaching his decision on residual functional capacity. [AR at 18-20] The ALJ used the statements made by friends and family to demonstrate inconsistency in Plaintiff's allegations of pain. [AR at 19]  The ALJ limited the weight given to the statements of friends and family in establishing disability because he believed the testimony of Dr. Goldhamer and the State Agency consultants were more medically informed. [AR at 20]

The ALJ determined Plaintiff was unable to perform any past relevant work as a receptionist, billing clerk, or bookkeeper because of the side effects of her mediation**.** [AR at 20] However, the ALJ found Plaintiff able to perform sedentary work limited to simple, repetitive tasks. [AR at 20]

**3.      Plaintiff's Contentions**

      **A.      Plaintiff claims the ALJ's reasons for discrediting Plaintiff's allegations of**

1    **disabling pain were legally insufficient.**

2         Plaintiff claims the ALJ's reliance on the statements of Plaintiff's friends Gretchen Bauer and

3    Amy Haynes regarding Plaintiff's amount of volunteerism to demonstrate the Plaintiff's lack of

4    credibility lacked specificity and thus were not clear and convincing.  [Doc. No. 14 at p. 4-6]

5    Specifically, Plaintiff claims these two statements work to corroborate, not discredit, her testimony

6    about her limited abilities.  [Doc. No. 14 at p. 6-7]

7         Additionally, Plaintiff contends the ALJ's findings about Plaintiff's daily activities do not

8    discredit her testimony about the intensity of her disability.  [Doc. No. 14 at p. 7]  Plaintiff contends

9    her activities neither contradict her own testimony, nor meet the work skills requirement--both

10   mechanisms used to establish adverse credibility.[2]  [Doc. No. 14 at p. 8]  Because Plaintiff contends

11   the ALJ's reasons for disbelieving her are inadequate, Plaintiff contends her pain allegations must be

12   deemed true as a matter of law. [Doc. No. 14 at p. 9]

13        Defendant argues the ALJ provided valid reasons supported by the record for finding Plaintiff's

14   testimony was not credible.  [Doc. No. 15-1 at p. 4]  Defendant contends the ALJ found Plaintiff's

15   subjective complaints were inconsistent with both the objective evidence and Plaintiff's daily

16   activities.  [Doc. No. 15-1 at p. 4]  Defendant argues Plaintiff's testimony was inconsistent with the

17   results of a physical exam and with the testimony of several doctors regarding Plaintiff's capabilities.

18   [Doc. No. 15-1 at p. 4]   Defendant analogizes to cases where the claimant's daily activities were

19   inconsistent with his or her testimony and worked to discredit the Plaintiff.  [Doc. No. 15-1 at p. 4]

20   Defendant points to Plaintiff's many daily tasks such as driving children to school, shopping, cooking,

21   and volunteering--all corroborated by family and friends.  [Doc. No. 15-1 at p. 5]  Defendant claims

22   this functional activity is inconsistent with Plaintiff's own testimony; therefore, the ALJ's credibility

23   finding should be affirmed.  [Doc. No. 15-1 at p. 5]

24        An ALJ must provide reasons for discounting a plaintiff's testimony.  *Stewart v. Sullivan*, 881

25   F.2d 740, 743 (9th Cir. 1989).  However, the ALJ cannot reject the claimant's testimony solely on the

26   basis the testimony is not supported by objective medical evidence, but must use a combination of

27   _____

28   [2] *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (explaining contradictory testimony and work skills requirement as a
     means of establishing adverse credibility).

factors to make such a determination. *Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991). When determining a plaintiff's credibility, the ALJ may consider the following: (1) claimant's reputation for truthfulness; (2) inconsistencies in either the claimant's testimony or between her testimony and her conduct; (3) claimant's daily activities; (4) claimant's work record; (5) testimony from doctors and other third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). If an ALJ's credibility finding is supported by substantial evidence from the record, the court may not second guess such a finding. *Id.* at 959.

Further, the ALJ must present clear and convincing reasons explaining why he or she discredits a claimant's testimony, absent a finding of claimant malingering. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th. Cir. 2008); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). General findings are insufficient; the ALJ must point to specific non-credible testimony and specific undermining evidence. *Id.*

The Ninth Circuit has held ALJs can consider the plaintiff's daily activities when determining whether a plaintiff's pain allegations are valid. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005), *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). If the claimant is able to perform daily functions "involv[ing] many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude the claimant's pain does not prevent the claimant from working." *Fair*, 885 F.2d at 603. However, the Ninth Circuit was quick to point out instances where some daily activities are not easily transferable to the workplace, such as merely performing minimal housework. *Id.*

In *Fair*, the Ninth Circuit affirmed the ALJ's denial of benefits. 885 F.2d at 604. The court ruled the claimant's testimony of severe, debilitating, and persistent pain did not match the following objective evidence: the claimant had minimal treatment by doctors and physical therapists; the claimant failed to comply with the treating physician's recommendations, and; the claimant remained fully capable of caring for his personal and household needs. *Id.; see also Thomas*, 278 F.3d at 959 (affirming ALJ's findings discrediting claimant where no objective medical evidence existed to support claimant's description of pain and claimant engaged in various household chores and presented conflicting evidence of her activities to two different individuals); *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (affirming ALJ's discrediting claimant where treating physician could not find

objective medical support for claimant's pain testimony, the claimant performed many household chores--shopping, washing dishes, cooking, and visiting relatives--and the claimant was not taking prescription medication); *Burch*, 400 F.3d at 680 (affirming ALJ's finding discrediting claimant where objective medical evidence did not support claimant's testimony and claimant's daily activities included caring for herself and others, cooking, cleaning, shopping, and personal financial management).

Here, the ALJ found "the clamaint's medically determinable impairment could reasonably be expected to produce the alleged symptoms." (AR at 19)  However, the ALJ discredited Plaintiff's subjective pain and symptom testimony only as to "intensity, persistence and limiting effects" for the following reasons: (1) Plaintiff's statements as to her limitations were inconsistent with medical opinions and observations; (2) the statements of her friends and family were inconsistent with Plaintiff's own testimony; (3) the statements of Plaintiff's friends and family were inconsistent with medical reports and (4) the opinions of medical experts were given greater weight than those of lay witnesses.  (AR at 19-20)

### 1. Plaintiff's Credibility

There is no evidence in the administrative record to suggest malingering on Plaintiff's part. Accordingly, the ALJ was required to support his credibility finding with clear and convincing evidence.  *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003).  As explained above, when determining a plaintiff's credibility, the ALJ may consider: (1) claimant's reputation for truthfulness; (2) inconsistencies in either the claimant's testimony or between her testimony and her conduct; (3) claimant's daily activities; (4) claimant's work record; (5) testimony from doctors and other third parties concerning the nature, severity, and effect of the claimant's condition.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

The ALJ found Plaintiff's pain allegations to be inconsistent "with the evidence of the record" (AR at 19) and "with the preponderance of the opinions and observations by medical doctors in this case." (AR at 20)  Specifically, the ALJ considered Plaintiff's testimony of a worsening condition but also received testimony from medical expert, Dr. Goldhamer, who opined that Plaintiff's medical records showed a relatively stable illness. (AR at 34-35, 42)  Moreover, while Plaintiff testified her

condition was in decline, the ALJ considered witness statements showing she continued to volunteer at community and school functions.  (AR at 32-33, 37)  As for consideration of Plaintiff's daily activities, the ALJ heard testimony from Plaintiff indicating that while she no longer does housework, she does continue to grocery shop regularly for her family and takes her children to and from school.  (AR at 39-40)  The evidence considered by the ALJ is specifically identified in his decision, documented in the administrative record and properly falls into the categories delineated by the Ninth Circuit in *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).  The Court may not, therefore, second guess the ALJ's credibility finding as to Plaintiff.  *Id.* at 959.  Accordingly, **IT IS RECOMMENDED** the Court find the ALJ properly determined Plaintiff's credibility was impeached by inconsistencies with the record.

### 2. Credibility of Friends and Family

In a related argument, Plaintiff claims the ALJ erred in failing to evaluate the third party statements by Plaintiff's relatives and friends.  Specifically, Plaintiff claims the ALJ rejected the statements of Plaintiff's mother, husband, acquaintances, and former employer, which is against regulations. [Doc. No. 14 at p. 19-23]  Plaintiff claims in cases where the claimant's pain testimony is not supported by objective medical evidence, the ALJ is required to consider lay witness testimony. [Doc. No. 14 at p. 22]

Defendant contends the ALJ properly rejected the statements of the third parties because the testimony of the lay witnesses conflicted with the medical evidence.  [Doc. No 15-1 at p. 8]  Additionally, Defendant argues because of the lay witnesses' close relationship (friends and relatives) to Plaintiff, they were likely biased in their statements concerning Plaintiff.  [Doc. No 15-1 at p. 8]

The ALJ may consider evidence from other sources (spouses, relatives, friends, parents, caregivers, and neighbors) concerning a claimant's ability to work.  20 C.F.R. § 404.1513(d)(4).  Where the severity of a claimant's pain exceeds the pain supported by objective medical evidence, "careful consideration must be given to any available information about symptoms." Soc. Sec. Ruling, 95-5p (1995) (*superseding* Soc. Sec. Ruling, 88-13 (1988)).  Further, the weight given to such opinions varies based on the following: (1) how long the source has known and how frequently the

source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment, and; (6) any other factors supporting or refuting the opinion.  Soc. Sec. Ruling, 06-03p (2006).  An ALJ can subsequently reject or discount the testimony of lay witnesses if he or she provides reasons germane to each witness whose testimony he or she rejects.  *Smolen*, 80 F.3d at 1288; *Dodrill*, 12 F.3d at 919 ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").  Simply because the witnesses in question are related to the claimant does not require rejection of such testimony due to potential biases.  *Smolen*, 80 F.3d at 1289.  Such testimony is particularly valuable and to craft a rule which would reject such testimony would limit the testimony of any family member in any case.  *Id.*

In *Dodrill*, the ALJ dismissed the evidence of lay witnesses because he determined they were repeating the claimant's complaints, and the ALJ had determined the claimant was not credible.  12 F.3d at 918-19.  However, the *Dodrill* court determined the testimony of witnesses--who sufficiently explained when and to what extent they had the opportunity to observe the claimant--could not be discarded.  *Id.*

In *Bayliss*, the ALJ accepted the testimony of the claimant's lay witnesses which was consistent with the record of claimant's activities and objective evidence in the record and rejected portions of testimony not meeting this standard.  427 F.3d at 1218.  The *Bayliss* court agreed inconsistency with medical evidence is a germane reason for discrediting the testimony of lay witnesses.  *Id.*

Here, the ALJ considered the testimony of lay witnesses, including friends, family and a former employer.  Specifically, the ALJ indicated he considered Exhibits 10E through 16E and found the anecdotal evidence provided therein described a Plaintiff who was "much less limited than [how] the claimant portrays [herself] in her testimony." (AR at 19) Moreover, the ALJ found the lay witness declarations lacked detail and were inconsistent with the medical evidence. (AR 19-20)  As a result, the ALJ properly gave more weight to the statements of the medical expert and state agency consultants as to whether Plaintiff has a severe impairment which precludes substantial gainful activity. (AR at 20)   From the review of the record, it is clear the ALJ considered the lay witness

evidence and articulated the reasons for not fully crediting this testimony over the testimony given by medical professionals.  While the ALJ may not have listed each witness by name, he collectively addressed the lay witness testimony and cited specifically to the testimony of Gretchen Bauer and Amy Haynes.  Contrary to Plaintiff's assertions, the ALJ did not reject the lay witness testimony without specific comment and findings, but ultimately discounted witness testimony after considering the totality of the record.  "It is the ALJ's role to resolve evidentiary conflicts.  If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld."  *Allen v. Sec'y of Health & Human Servs*., 726 F.2d 1470, 1473 (9th Cir. 1984).  Accordingly, **IT IS RECOMMENDED** the Court find the ALJ properly rejected lay witness testimony inconsistent with the testimony of medical experts.

**B.      Plaintiff claims the ALJ erred in not considering Plaintiff's fatigue.**

Plaintiff argues the ALJ did not consider all the evidence available when reaching his decision. [Doc. No. 14 at p. 9]  Plaintiff claims the record demonstrates the existence of fatigue.  [Doc. No. 14 at p. 10]  Plaintiff also contends the ALJ failed to provide clear reasons supported by specific facts in the record to reject her testimony of fatigue.  [Doc. No. 14 at p. 10]  Additionally, Plaintiff claims the hypothetical questions posed to the vocational expert did not contain limitations from fatigue; therefore, the resulting opinion of the vocational expert is incomplete. [Doc. No. 14 at p. 12]

Defendant argues the ALJ considered and discredited Plaintiff's fatigue, which was embodied in the subjective pain complaints the ALJ considered.  [Doc. No. 15-1 at p. 3]

An ALJ must consider all factors with the potential to significantly affect a claimant's ability to work.  *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993).  Further, the ALJ's hypothetical questions posed to the vocational expert must set forth all of the claimant's impairments.  *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001) (*citing Gamer v. Sec'y of Health & Human Servs.,* 815 F.2d 1275, 1279 (9th Cir. 1987)).  If the ALJ determines a claimant's subjective complaints of pain are not credible and no objective evidence in the record exists supporting a claimant's complaint, the ALJ does not need to include such information in a hypothetical to a vocational expert.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)(citing *Copeland v. Bowen*, 861 F.2d 536, 540-41 (9th Cir.

1   1988) (holding that hypothetical question need not include claimant's subjective impairments if the

2   ALJ makes specific findings that claimant is not credible.)).

3        Here, as detailed in Discussion Section 3(A)(1) above, the ALJ found Plaintiff's testimony

4   regarding "pain as well as fatigue and confusion" to be inconsistent with the record of medical

5   evidence. (AR at 19) Consequently, the ALJ did not need to include fatigue as an element of his

6   hypothetical to the vocational expert.  Nevertheless, the ALJ did acknowledge the side effects of

7   Plaintiff's medications on her cognition in accordance with Dr. Goldhamer's testimony and included

8   this limitation in his final hypothetical to the vocational expert.  (AR at 20, 45 and 50)  The ALJ's

9   hypothetical question reflected all the limitations the ALJ found were supported by credible evidence

10  in the record.  Accordingly, **IT IS RECOMMENDED** the Court find the ALJ did not err in declining

11  to include fatigue as a limitation in his hypothetical question to the vocational expert.

12  **C.     Plaintiff claims the ALJ's decision of Plaintiff's Residual Functional Capacity was not**

13  **supported by substantial evidence from the record.**

14       Plaintiff acknowledges the ALJ's correct recitation of the medical experts' assessments;

15  however, Plaintiff claims the ALJ contradicts the assessments of these experts in his residual

16  functional capacity ("RFC") finding.  [Doc. No. 14 at p. 14-15]  Specifically, Plaintiff suggests the

17  ALJ did not cite a medical opinion in support of finding Plaintiff able to perform sedentary work.

18  [Doc. No. 14 at p. 15]

19       Defendant maintains the ALJ properly relied on the testimony of medical experts in assessing

20  Plaintiff's RFC. [Doc. No. 15-1 at p. 5]  Defendant contends the ALJ's RFC finding is supported by

21  substantial evidence from the record, namely, Dr. Goldhamer's opinion.  [Doc. No. 15-1 at p. 6]

22  Defendant argues Dr. Goldhamer's opinion was based on medical evidence from the record and

23  therefore constituted substantial evidence to support the ALJ's RFC finding.  [Doc. No. 15-1 at p. 6]

24  Further, Defendant argues that, although the ALJ may not have fully credited Dr. Goldhamer's

25  testimony in his opinion, the ALJ fully presented Dr. Goldhamer's testimony to the vocational expert,

26  who then determined Plaintiff could perform the jobs of assembler, production supervisor, or cuff

27  folder. [Doc. No. 15-1 at p. 6-7]  Defendant notes the ALJ is not required to include limitations that

28  he does not find credible.  [Doc. No. 15-1 at p. 7]

1    A claimant's residual functional capacity is the most he or she can do despite his or her

2    limitations. 20 C.F.R. § 404.1545(a)(1).  The RFC must take into account all a claimant's impairments,

3    otherwise his or her assessment is considered defective.  *Valentine v. Comm'r Soc. Sec. Admin.*, 574

4    F.3d 685, 690 (9th Cir. 2009).   However, "analysis for medical conditions or impairments that the

5    ALJ found neither credible nor supported by the record is unnecessary." *Bayliss v. Barnhart*, 427 F.3d

6    1211 (9th Cir. 2005).  Consequently, the ALJ is not required to include in his or her hypothetical

7    question to the vocational expert impairments he or she finds non-credible.  *Bayliss*, 427 F.3d at 1217;

8    *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001).

9    In *Bayliss, supra*, the court affirmed the ALJ's RFC determination where the ALJ only

10   considered those impairments and conditions the ALJ found credible.  427 F.3d at 1217.  In *Valentine,*

11   *supra*, the Ninth Circuit found the RFC was aligned with experts' testimony, although the RFC was

12   worded differently than the experts' opinions. 574 F.3d at 691-92.  The court determined the word

13   "medium" in the RFC did not contradict "simple paced (unrushed) tasks" contained in the expert's

14   opinion. *Id.* at 691.  Here, the ALJ found Plaintiff's ability to perform the full range of sedentary work

15   was "impeded by additional limitations." (AR 21)   Consequently, the ALJ questioned the vocational

16   expert about Plaintiff's ability to perform work from the unskilled sedentary occupational base while

17   taking into account her additional limitations.  Specifically, the ALJ posed the following hypothetical

18   to the vocational expert:

19   "And then the fourth hypothetical is the gastroenterologist that was just here, Dr. Goldhamer,
     and he said lift on occasion ten pounds, less than ten pounds; stand and walk two of eight; sit

20   six hours; no ropes, ladders, or scaffolds; occasionally as to the rest of the postural; no
     manipulative limitations; avoid concentrated exposure to extreme cold, vibratory tools, fumes,

21   odors, dust; medication would not allow her to do complex work, better limited to simple,
     repetitive work.."

22

23   (AR 50)

24   A comparison of Dr. Goldhamer's expert testimony with the hypothetical posed to the

25   vocational expert reveals the ALJ's hypothetical and the RFC determination were based directly on

     the expert testimony of Dr. Goldhamer who, only moments before the vocational expert was

26   examined, testified to the limitations encompassed in the ALJ's hypothetical.  (AR42-45)  Based on

27   the substantial evidence provided by Dr. Goldhamer, the vocational expert opined Plaintiff could

28   perform 80% of the 200 unskilled job titles in the grid including assembler, product inspector and cuff

- 13 -

folder.  (AR 21)  *See Thomas v. Barnhart* 278 F.3d 947, 957 (9th Cir. 2002)("[t]he opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.")  **IT IS THEREFORE RECOMMENDED** the Court find the ALJ's RFC determination was based on substantial evidence.

**D.     Plaintiff claims the ALJ failed to adequately reject the opinions of Plaintiff's treating physician.**

Plaintiff contends opinions of the treating physician are generally afforded greater weight than those of other physicians. [Doc. No. 14 at p. 16]  Plaintiff claims the ALJ rejected the opinion of treating physician Dr. Rashad Ansari without citing to specific reasons based on the record.  [Doc. No. 14 at p. 16]  Plaintiff claims the ALJ rejected Dr. Ansari's opinion because Dr. Ansari provided no reasons why Plaintiff would miss four days of work per month; however, Plaintiff contends Dr. Ansari's opinion does provide reasons for missing four days of work per month. [Doc. No. 14 at p. 16-17]  Plaintiff further contends Dr. Ansari's opinion is corroborated by the opinion of Dr. Goldhamer, who also indicated Plaintiff would have less functional days during each month.  [Doc. No. 14 at p. 17-18]  Plaintiff claims the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Ansari's opinion; therefore, the opinion of Dr. Ansari should be accepted as a matter of law. [Doc. No. 14 at p. 18]

Defendant argues the ALJ properly rejected the opinion of Dr. Ansari because Dr. Ansari neither quantified the impairments assessed, nor explained the basis for  his conclusions. [Doc. No. 15-1 at p. 6]    Further, Defendant contends the failure of a treating source to provide objective evidence to support his conclusions validates an ALJ's rejection of that physician's opinion. [Doc. No. 15-1 at p. 6]  Additionally, Defendant argues a treating source's failure to explain how impairments translate into specific limitations is grounds for rejection of an opinion. [Doc. No. 15-1 at p. 6]

The opinions of treating physicians are generally given greater weight than those of other physicians because of the treating physicians' intimate knowledge of the claimant's condition. *Aukland v. Massanari*, 257 F.3d 1033, 1037 (9th Cir. 2001).  Further, in order to reject the opinion of a treating physician, the ALJ is required to show specific and legitimate reasons based on substantial evidence from the record.  *Id.  See also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

1   1996).  If the opinion is uncontroverted, the ALJ must provide clear and convincing reasons for

2   rejecting such testimony.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  *See also Smolen*,

3   80 F.3d at 1285, *Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989).  Where the report of a

4   treating physician is "brief and conclusionary in form with little in the way of medical findings to

5   support the conclusion that appellant was totally disabled," the ALJ is proper in rejecting such

6   information. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 n. 3 (9th Cir. 2004) (*quoting*

7   *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1988)).  However, where the ALJ fails to provide

8   adequate reasons for rejecting the treating physician's opinion, the court will credit the treating

9   physician's opinion as a matter of law.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).

10         The Ninth Circuit has determined the ALJ can properly reject a treating physician's testimony

11   under the following circumstances: (1) where the testimony is in the form of a checklist; (2) is not

12   supported by objective evidence; (3) was contradicted by other statements and assessments of the

13   claimant's condition, and; (4) was based on the claimant's subjective description of pain.  *Batson*, 359

14   F.3d at 1195.  *See also Connett*, 340 F.3d at 875 (9th Cir. 2003) (determining ALJ properly rejected

15   treating physician's report, where the report contradicted treating physician's own notes and was

16   inconsistent with opinions of other physicians); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir.

17   2001) (ALJ properly rejected the opinion of treating physician, where treating physician's opinion was

18   inconsistent with his own examination and notes of claimant).

19         Here, Dr. Ansari's opinion in Exhibit 18 F is in the form of a checklist and fails to provide

20   objective medical evidence supporting or explaining the notation that Plaintiff will miss four work

21   days per month.  (AR 534)  The ALJ properly rejected the opinions expressed in Exhibit 18F based

22   on the first and second criteria articulated in *Batson*.  (AR 20)  In addition, the ALJ found Dr. Ansari's

23   assessment of the Plaintiff's ability to alternately walk, stand and sit for 12 hours in an 8-hour-day

24   inconsistent with the opinion that she would miss four days of work in a month.  (AR 20)  In his

25   written decision, the ALJ provided specific reasons identified in *Batson* for rejecting Dr. Ansari's

26   opinion, namely checklist formatting, unsupported opinions and contradictory medical assessments.

27   **IT IS THEREFORE RECOMMENDED** the Court find the ALJ properly  rejected the opinion of

28   Dr. Ansari's opinion with specific and legitimate reasons as identified in *Batson*.

09cv1857 MMA (WMc)

1  **E.      Plaintiff claims the ALJ erred by failing to consider the treating physician's opinion**

2  **contained in Plaintiff's DMV Disability Placard Application**

3      Plaintiff contends the ALJ failed to consider the treating physician's opinion in Plaintiff's DMV

4  Disability Placard Application, including information regarding Plaintiff's limited ability to stand and

5  walk. [Doc. No. 14 at p. 23]

6      Defendant argues Plaintiff has failed to provide any analysis for this issue, which should result

7  in a forfeiture of this issue. [Doc. No. 15-1 at p. 9]  Further, Defendant also argues the ALJ explained

8  the signature on the disability placard application was illegible, making it impossible to determine the

9  signer's relationship to Plaintiff. [Doc. No. 15-1 at p. 9]   Defendant contends the standards for

10  obtaining a disability placard application from the DMV vary from the Commissioner's definition of

11  disability.  [Doc. No. 15-1 at p. 9]

12      An ALJ may reject a treating physician's opinion that is unsupported by objective evidence.

13  *Batson*, 359 F.3d at 1195.  Moreover, the ultimate issue of disability is reserved to the Commissioner.

14   20 C.F.R. § 404.1527(e)(1),(3); 20 C.F.R.§ 416.927(e)(1), (3); *Nyman v. Hackler*, 779 F.2d 528 531

15  (9th Cir. 1986).

16      Here, the ALJ rejected the Department of Motor Vehicles (DMV) Application for Disabled

17  Person Placard as the sole indicator of determining disability under the Social Security Act.  (AR 18)

18  The ALJ explained the doctor's certificate of disability was not determinative on the issue of disability

19  because the DMV utilizes different criteria for issuing placards which cannot be interchanged with

20  the guidelines set forth by the Social Security Administration.   (AR 18)   Moreover, the ALJ

21  questioned the illegible signature on the doctor's certificate, which was in the form of a brief checklist

22  and purported to originate from Dr. Mark Haberman's office.  (AR 18)  In the decision, the ALJ makes

23  clear that, while he considered the DMV Application for Disabled Person Placard, it was rejected

24  because it was unsupported and not determinative of disability under the criteria delineated by the

25  Social Security Administration.  **IT IS THEREFORE RECOMMENDED** the Court find the ALJ

26  properly  rejected the DMV Application for Disabled Person Placard as unsupported.

27  *///*

28

1   **F.      Plaintiff claims the ALJ's decision failed to provide a valid opinion of Plaintiff's residual**
2   **functional capacity.**

3          Plaintiff contends the ALJ failed to provide a valid opinion of Plaintiff's residual functional
4   capacity because it did not conform to the function-by-function assessment of Plaintiff's ability to
5   perform work activities, as required by the Social Security Administration. [Doc. No. 14 at p. 23-24]
6   Defendant did not respond to this contention. [Doc. No 15-1]

7          Soc. Sec. Ruling 96-8P says an ALJ must first perform a function-by-function assessment of
8   the claimant's physical and mental capacities in determining whether the individual can perform past
9   relevant work as he or she actually performed it. S.S.R. 96-8P, 1996 WL 374184 at *3.  Prior to
10  assigning an exertional level that an individual can perform, it is necessary to assess the individual's
11  capabilities, to determine whether the individual will be able to perform the range of work required
12  at that exertional level. *Id.*

13         Plaintiff's contention is without merit.  A review of the hearing transcript reveals the ALJ
14  conducted a function-by-function assessment of Plaintiff's ability to perform work activities during
15  his examination of Dr. Goldhamer.  (AR 43-45) Specifically, the ALJ discussed Plaintiff's abilities
16  function-by-function with Dr. Goldhamer by starting with her lifting and carrying capability, then
17  postural limitations, manipulative skills, environmental limitations and finally cognition.  (AR 42-45)
18   The record reflects that immediately prior to assigning an exertional level of simple repetitive work
19  to Plaintiff, the ALJ assessed Plaintiff's individual capabilities based on the findings and opinions of
20  medical expert, Dr. Goldhamer, which, as previously discussed, constitute substantial evidence.  An
21  RFC is an administrative finding reserved to the Commissioner based on consideration of relevant
22  evidence, including medical evidence.  SSR 96-5p;  §404.1527 (e)(2).  Because this Court's review
23  of the record indicates the ALJ did consider Plaintiff's limitations on a function-by-function basis,
24  even if this was not explicit in the written decision, **IT IS RECOMMENDED** the Court find the ALJ
25  properly assessed Plaintiff's residual functional capacity.

26  ///
27  ///
28  ///

1

## IV.

2

## CONCLUSION AND RECOMMENDATION

3    For the reasons explained above, **IT IS HEREBY RECOMMENDED** the Court **DENY**

4    Plaintiff's motion for summary judgment and **GRANT** the Commissioner's cross-motion for summary

5    judgment.

6    **IT IS ORDERED** that no later than **May 7, 2010**, any party to this action may file written

7    objections with the Court and serve a copy on all parties.  The document should be captioned

8    "Objections to Report and Recommendation."

9    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the court

10   and served on all parties no later than **May 14, 2010**.  The parties are advised that failure to file

11   objections within the specified time may result in waiver of the right to raise those objections on

12   appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); see also

13   Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

14   **IT IS SO ORDERED.**

15   DATED: April 23, 2010

16

Hon. William McCurine, Jr.

17   U.S. Magistrate Judge, U.S. District Court

18

19

20

21

22

23

24

25

26

27

28